# Case No. 18,196.

## YZNAGA et al. v. PEASLEE.

[1 Cliff. 493.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1860.

DUTIES ON IMPORTS — APPRAISEMENT BY SAMPLES — WAIVER OF OBJECTIONS.

1. Where sugar imported into the United States is appraised by samples which were drawn from the packages by the person called the sampler, and were delivered by him to the local appraisers, and the examination was made by them without having seen the packages, *held*, in the absence of any objection by the importers as to the manner of drawing the samples, or to their identification, that it was a substantial compliance with the requirements of the act of congress authorizing the appraisal in such a case to be made by samples.

2. And where, upon appeal to merchant appraisers, the samples were, after the decision of the local appraisers, placed in the depository in the appraisers' department, and were there kept until the meeting of the merchant appraisers, and were then produced by one of the local appraisers, and no objection as to the identity of the samples being then made by the importers, *held*, that all objections which might have been taken at the appeal were waived by the importers.

3. If the samples are fairly selected from one in ten of the packages, and are fully identified, it is of no importance whether they were drawn from the packages by the appraisers themselves or by the official sampler of the appraisers' department.

[Cited in brief in Re Rosenwald, 59 Fed. 766.]

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

This was an action of assumpsit brought by the plaintiffs [Antonio Yznaga and others] as importers of foreign merchandise, against the defendant [Charles H. Peaslee] as collector of the port of Boston, to recover back an alleged excess of duties which they had previously paid on an importation from Trinidad, of two hundred hogsheads of Muscovado sugars. The goods were entered at the custom-house at Boston for warehousing at the public stores, October 28, 1853. Certain additions were made to the invoice value by the importers at the time of the entry, so that the entry value amounted to seven thousand seven hundred and fourteen dollars. To this amount the local appraisers added six hundred and ninety-six dollars and twenty-three cents. The importers appealed to merchant appraisers, but they returned the same sum, making the dutiable value of the importation eight thousand four hundred and ten dollars and twenty-three cents. Duties were accordingly calculated on that basis, and the appraised value exceeding by ten per cent. the value declared in the entry, a duty of twenty per cent. in addition to the duties otherwise imposed by law was levied and claimed by the collector. The local appraisers reported December 23, 1853; and the merchant appraisers, January, 1854. On the 2d and 3d of February the goods were withdrawn from the warehouse and the duties paid under protest. None of the hogsheads containing the sugars were actually examined by the local appraisers, nor were the sugars at any time seen by the merchant appraisers. The appraisement was made by both upon samples drawn out by the examiner of sugars, liquors, and cigars in the appraisers' department. His duties, as he stated, were to sample goods, and carry the samples to the office of the local appraisers. He is called the sampler, holding no commission, but usually selected by the local appraisers, and approved by the secretary of the treasury. Samples are drawn from one in ten of the packages; but where all the packages bear the same mark, indicating them to be all of the same description, one sample, containing a small quantity of the importation, from one in ten of the packages, is usually regarded as sufficient to enable the appraisers to perform their duties according to law. Such samples, when properly prepared, are put into secure wrappers, marked with the number of the manifest, together with the marks of the packages from which they were selected, and other marks to secure their identification. When thus prepared, the samples are placed in a depository designated for the purpose, and there kept until examined by the local appraisers. In case appeal to merchant appraisers is taken, the samples are kept in the same depository until examined by them. Objection in this case was made that the samples were not properly drawn, and also that they were not satisfactorily identified

with the sugars in question. The jury gave a verdict for the defendant, subject to questions of law that arose at the trial.

B. F. Hallett, for plaintiffs.

The merchant appraisers cannot delegate any part of their powers and duty of examining one in ten of the packages, or samples of one in ten, to any other person. The importer, on his appeal, is entitled to the judgment of the merchant appraisers, based upon their knowledge of the true value of the merchandise. Bartlett v. Kane, 16 How. [57 U. S.] 263–272; Rankin v. Hoyt, 4 How. [45 U. S.] 335; Tappan v. U. S. [Case No. 13,-749]. That the merchant appraisers should give their decision upon the mere exhibition of supposed samples, without it being conclusively known to them that they are genuine and fair samples, is imposing a risk upon the importer, against which the law expressly protects him. 5 Stat. 563, §§ 16, 17, 21; Greely's Adm'r v. Burgess, 18 How. [59 U. S.] 415, 416; 4 Stat. 410; 3 Stat. 375, § 16. If the merchandise be such as is bought and sold by sample, the appraisement may be made by samples, due care being taken that they are fairly selected from the packages, designated on the invoice by the collector, and identified as such. Treas. Reg. 1857, 321. The "due care" applies to the appraisers, who must have the knowledge personally. Greely v. Thompson, 10 How. [51 U. S.] 225. The act of the appraisers was in the nature of. a judicial act.

C. L. Woodbury, for defendant.

As to the duty of appraisers. 3 Stat. 735; 5 Stat. 563. Sampler. 4 Stat. 411. And the clerks and all other persons employed in the appraisers' office shall be appointed by the principal appraisers, and the number and compensation fixed by the secretary of the treasury. Treas. Reg. 1857, 277. What examination of goods necessary. Sampson v. Peaslee, 20 How. [61 U. S.] 580; Burgess v. Converse [Case No. 2,154]. The sampler, as clerk, has a substantial duty to perform, and as an officer of the United States his duties are described in his oath. The drawing of samples is a ministerial act, not requiring judicial discretion. Barry v. Arnaud, 2 Perry & D. 646. It is a general principle that a ministerial officer cannot appoint a deputy. Broom, Leg. Max. 666; Cooper v. Coates, 5 Man. & G. 98; Midhurst v. Waite, 3 Burrows, 1260. Where no discretion or judgment are required. Rex v. Lenthal, 3 Mod. 150. Ministerial act with discretion involved. Parker v. Kett, 1 Salk. 96. There is no imperative statute rendering a personal inspection necessary. Dwar. St. 606–611; Cooper v. Coates, 5 Man. & G. 98; Midhurst v. Waite, 3 Burrows, 1260.

CLIFFORD, Circuit Justice. Mere matters of fact, it must be understood, were settled by the verdict, and the finding of the jury will not be revised by the court in a proceeding like the present.

Evidence was introduced by the defendant, showing that the goods constituting the importation were of the class bought and sold by samples, but there was considerable contrariety in the testimony as to the manner in which the samples were usually drawn in such sales. Both parties examined the sampler as to the manner in which the samples in this case were drawn, and he admitted that his recollection of the particular transaction was not very distinct. Taken as a whole, however, his testimony shows, to the satisfaction of the court, that he went to the vessel, or to the place where the vessel was discharged, and drew the samples in the usual and regular way, according to the course of business at the custom-house and the practice of the port. Two samples, at least, were exhibited to the appraisers on the appeal, and, from the marks found upon. the wrappers recognized by the sampler, there can be no doubt that they were the identical samples drawn from the sugars in question, and used by the local appraisers. Notice was given by the attorney of the plaintiffs of the time and place designated for the hearing of the appeal, and he testifies that he was present with the merchant appraisers. When the samples were exhibited, he inquired what evidence there was of their identity, or that they had been properly taken, and he states in substance and effect that he received no answer to his inquiries; but he made no objection to an examination by samples, and by his silence acquiesced in the proceedings, remaining at the public store until he ascertained that the goods had been advanced. Certain propositions of fact involving the identity of the samples and the fairness of their selection are also submitted by the plaintiffs, which, in the view taken of the case, need not be further noticed, as they are sufficiently answered by what has already been remarked. Suffice it to say, without entering more into detail, that all those propositions are substantially negatived by the jury, and in the view of the court were fully disproved by the evidence. With these remarks we come to the examination of the legal questions presented in the case, which are involved in greater difficulty, and will require more careful consideration. Appraisement by samples is conceded to be lawful where the goods imported are such as by commercial usage are bought and sold in that manner in the market, provided due care be taken that the samples are properly and fairly selected from one in ten of the packages as designated on the invoice, and provided the samples when exhibited to the appraisers and examined by them be fully identified as the ones selected for the purpose. But the plaintiffs deny that the appraisers can lawfully delegate their power and duty to another person to select the samples from packages designated on the invoice by

the collector, or, in other words, they insist that to allow the samples to be selected by a sampler, as in this case, is imposing upon the importer a risk and uncertainty wholly unauthorized by law. Collectors are required to designate on the invoice at least one package of every invoice, and one package at least of every ten packages of imported goods, wares, and merchandise, and order the same to the public store to be opened, examined, and appraised. 5 Stat. 565; Treas. Reg. p. 182. Bulky articles, however, are seldom or never sent to the public store; and in respect to such importations the regulations provide that the collector "will direct their examination on the wharf, or other safe and suitable place, to be designated by him for that purpose." Recurring to those regulations, it will be seen that they also provide that, "if the merchandise be such as by commercial usage are bought and sold by samples, or where by such usage the character and quality of the merchandise are so determined, the appraisement may in such case be made by samples, due care being taken that they are properly and fairly selected from the packages designated on the invoice, and identified as such samples." Usage has sanctioned this mode of appraisement as constituting a compliance with the requirements of law, and it is now too late to question its correctness in the cases provided for in the treasury regulations. Those regulations were framed to enable the officers of the customs to perform their duties in the collection of the revenue; and it is difficult to see, where the importation consists of such goods as liquors, sugars, and the like, in what other satisfactory mode the appraisement could be effected. Such considerations undoubtedly induced the department to adopt the regulations, and inasmuch as it comports with a reasonable construction of the act of congress, it may well be sustained. Samplers, it seems, are appointed under the sixth section of the act of the 28th of May, 1830, which, among other things, provides that the clerks and all other persons employed in the appraisers' office shall be appointed by the principal appraiser, and their number and compensation limited and fixed by the secretary of the treasury. 4 Stat. 411. And by the ninth section of the act of the 30th of July, 1846, all clerks employed by the appraiser are required to take and subscribe an oath or affirmation faithfully and diligently to perform their duties, and to use their best endeavors to prevent and detect frauds upon the revenue. 9 Stat. 44. Inspectors in charge of the sample office are required by the regulations of the treasury to make daily reports to the store-keeper, stating what goods have been received and delivered in samples, and what have been transferred to the appraisers' store as merchandise for appraisement; and the regulations also provide that all labor in the receipt and delivery of samples shall be under the charge of the store-keeper at the appraisers' store; and for the faithful and prompt examination of sample packages, the appraisers are required to designate some competent officer connected with their department, to visit the sample office daily to superintend and aid in the examination of the packages. Pursuant to these various regulations, the samples in this case were drawn by the person designated as the sampler in the appraisers' office, and were by him duly marked and delivered to the local appraisers. Examination of the samples was made by them on the 23d of December, 1853; and they having marked up the goods, and the importer having appealed, the samples were placed in the depository in the appraisers' department, and there kept until the meeting of the merchant appraisers, when the samples were again produced by one of the local appraisers.

No objection is made to the proceedings before the local appraisers, and indeed none could be successfully urged, if the action of the merchant appraisers on appeal was correct. Burgess v. Converse [Case No. 2,154]. Some of the remarks of the judge in that case would seem to indicate that samples not drawn by the appraisers themselves could not in any case be allowed, but the conclusion of the opinion entirely negatives that view of the law, because the judge submitted the question to the jury, whether the examination actually made was in substance and effect equivalent to an examination of at least one package in ten of the goods constituting the importation. Examination had been made in that case by samples not selected by the appraisers, and the jury, under that instruction from the court, returned their verdict for the plaintiff, affirming that the examination made was not in substance and effect equivalent to the described examination of the packages. Error was brought by the defendant, but the supreme court approved the charge of the circuit judge. Greeley's Adm'r v. Burgess, 18 How. [59 U. S.] 416. Those cases, however, do not decide that a lawful examination and appraisement may not be made by samples where the samples are properly and fairly selected and fully identified, according to the regulations of the treasury department. On the contrary, the opinions in both cases impliedly admit that the appraisement, under some circumstances, may be made in that way, especially if it appear that the examination made was in substance and effect equivalent to an actual examination of the packages. Exceptions were taken to the examination of the packages in Sampson v. Peaslee, 20 How. [61 U. S.] 571, upon the ground that it was incomplete and insufficient; but the court held that where the examination is such as is usually made in buying and selling the articles, and was satisfactory to the appraisers, it was not open to the importer to show that it was insufficient. Nothing is wanting in this case to give full efficacy to the action of the appraisers, if in any case the examination may be made by samples, except that the samples were selected by the sampler

in the appraisers' department, and not by the appraisers themselves, as explained in the statement of the case. But due notice of the time and place appointed for the hearing of the appeal was given to the attorney of the plaintiffs, and the evidence shows that he was present at the examination for the purpose of protecting their interests. Inquiry was made by him what evidence there was of the identity of the samples, or that they had been properly selected, but he did not object upon the ground that the samples had been selected by the official sampler of the appraisers' department, and not by the appraisers; and, under the circumstances, he must be understood as having waived all objections respecting the samples, except such as are impliedly involved in his inquiries. Those inquiries had respect to the identity of the parcels exhibited and to the manner of the selection, and not to the person or persons by whom it was made. Both of those objections, even assuming that they were not subsequently waived, are fully overcome by the evidence. Considering the marks upon the wrappers, all question about the identity of the parcels is wholly removed, and the testimony of the sampler is entirely satisfactory to the point that the samples were selected in the regular and usual way. Giving all due latitude of construction to the inquiries made by the attorney, it is not possible to infer from his conduct that he intended to make any other objections to the samples than those already considered; and if not, then the conclusion under the circumstances must be, that all others within his knowledge were waived. Present as he was with the appraisers, he knew the samples were not taken by them; and, what is more, he was present when the local appraiser produced the samples from the depository in the appraisers' department; and being well acquainted with the course of business in the office, he must have known by whom they were selected, as the evidence shows there was but one sampler in the department. Strong doubts are entertained whether there is any validity in the objection, even if it were open to the plaintiffs, but it is not necessary to decide it in order to dispose of the case. No one suggests that casks of sugars or liquors should be broken by the appraisers; and if not, then, practically speaking, it is clear that the appraisement must be by samples, to be selected for the purpose. Assuming that samples are to be used, it cannot be very material to the importer whether they are actually drawn from the casks by the appraisers themselves or the official sampler of the appraisers' department, provided they are properly and fairly selected and fully identified. Samplers are appointed on account of their peculiar qualifications for the duties incident to the employment, and it is not perceived that they are any more likely to make mistakes than appraisers. In view of the whole case, I am of the opinion that there was no error at the trial, and, according to the agreement of the parties, there must be judgment on the verdict.